Filed 4/27/26  P. v. Brimmer CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DEON VONZELLE BRIMMER,<br><br>        Defendant and Appellant. | A172913<br><br>(City & County of San Francisco Super. Ct. No. 23012642) |

A jury convicted defendant Deon Brimmer of second-degree commercial burglary and vandalism.  He appeals from the trial court's sentencing decision not to treat his wobbler offense of second-degree burglary as a misdemeanor.  We find no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On a morning in August 2023, San Francisco Police officers responded to an alarm at the Sherith Israel synagogue.  The officers arrived at the synagogue, which was not open to the public at that time of day, and saw Brimmer inside wearing a blazer with a nametag and security badge that read " 'Sherith Israel Security.' "  Brimmer opened the front door and told the officers there were no problems.  Believing Brimmer was a security guard, the officers concluded the alarm had been accidental and left.

A tenant of the synagogue arrived at the front door and was having trouble with her key when Brimmer stood and opened the door for her.

1

Brimmer mentioned something about security or "some work that they were doing outside of the synagogue" before the tenant went to her office.

The synagogue's executive director, Gordon Gladstone, received alerts from an alarm company that multiple motion sensors had been activated within the building. Gladstone arrived at the synagogue and noticed the deadbolt lock on the office door was open. He entered the office and saw Brimmer sitting at the receptionist's desk. When Gladstone asked Brimmer to identify himself, Brimmer responded, " 'I'm security' " and said he had been hired by "the City." Gladstone asked to see Brimmer's identification, and Brimmer showed a California's driver's license but "withdrew it fairly quickly." When Gladstone asked to see it again, Brimmer refused and "[b]ecame evasive." Though finding Brimmer to be "calm" and "convincing in his belief that he was a security guard," Gladstone did not believe Brimmer and activated a silent alarm. After being told to leave, Brimmer took the security blazer off and asked Gladstone who was going to pay him for the three hours he had spent working.

Gladstone discovered that a window in the synagogue's kitchen had been broken, and that one of the offices had been "aggressively rifled through." He further discovered that someone "had attempted to disable the alarm by yanking open the alarm box," that the wires underneath the alarm horn had been cut or disconnected, and that one of the motion sensors in the office area had been pulled off the wall. A half-consumed bottle of wine was found under a desk.

The same police officers who responded to the earlier alarm returned to the synagogue. Gladstone provided them with video surveillance recordings and photographs from which the officers were able to identify Brimmer.

2

Brimmer was seen on video holding a wine bottle that had been in the kitchen's refrigerator.

A few days later, a synagogue custodian saw Brimmer on the street and recognized him from the surveillance video. She called police, who arrived and arrested Brimmer. He was charged by information with commercial burglary (Pen. Code, § 459[1]; count one), vandalism of a place of worship (§ 594.3, subd. (a); count two), and misdemeanor vandalism (§ 594, subd. (b)(1); count three). A jury trial was held in September 2024. The jury returned guilty verdicts on counts one and three and a not guilty verdict on count two.

In October 2024, Brimmer filed a sentencing memorandum asking the trial court to reduce his conviction on count one to a misdemeanor pursuant to section 17, subdivision (b). His counsel argued that the circumstances of the charged offense were "odd, and relatively benign," and that Brimmer has " 'mental or physical condition[s] that significant reduced [his] culpability for his crimes.' " Plus, Brimmer had never been in prison, was attending college, and was actively treating his condition.

At the sentencing hearing in January 2025, Brimmer's counsel emphasized the crime was at least in part the product of Brimmer's mental condition, which caused him to "mistakenly believe[]" his conduct was lawful. The prosecutor meanwhile noted that Brimmer "has four open misdemeanor cases . . . that involve violence and failures to comply with court orders" and "has a pattern of gaining access to real property where [he] is not authorized to be and attempting to convince others that he is lawfully there." The probation report described Brimmer's five prior convictions, each of which

---

[1]     Further unspecified statutory references are to the Penal Code.

resulted in a grant of probation, and noted Brimmer was on probation when he committed the instant offense.

The trial court found circumstances in aggravation as indicated by the probation department, but also found mitigating circumstances, including Brimmer's mistaken belief that his conduct was legal, and his significantly reduced culpability due to his mental condition. The court ultimately declared the burglary conviction to be a felony based on the circumstances of the offense—i.e., the offense was a commercial burglary of "a place of worship and peace," which was "significant even though the amount of damage and items taken were not substantial." The court further noted that Brimmer had "four open misdemeanor cases pending" and has "reengaged in similar contact while committing a commercial burglary and causing damage to the synagogue." The court suspended imposition of sentence and placed Brimmer on formal probation for two years. Among other things, the conditions of probation required Brimmer's compliance with an individualized treatment and rehabilitation plan and complete mental health counseling.

This appeal followed.

## DISCUSSION

Section 17, subdivision (b), "authorizes the reduction of 'wobbler' offenses—crimes that, in the trial court's discretion, may be sentenced alternatively as felonies or misdemeanors—upon imposition of a punishment other than state prison [citation] or by declaration as a misdemeanor after a grant of probation." (*People v. Alvarez* (1997) 14 Cal.4th 968, 974 (*Alvarez*).) Second degree burglary is a wobbler offense because it is punishable by imprisonment in state prison for two, four, or six years, or in a county jail for not exceeding one year. (§ 461, subd. (b).)

4

The decision to reduce a wobbler is "solely 'in the discretion of the trial court,'" and we review that decision under an "extremely deferential and restrained" abuse of discretion standard. (*Alvarez, supra*, 14 Cal.4th at pp. 977, 981.) "'We will not disturb the court's decision on appeal unless the party attacking the decision clearly shows the decision was irrational or arbitrary. [Citation.] Absent such a showing, we presume the court acted to achieve legitimate sentencing objectives.'" (*People v. Tran* (2015) 242 Cal.App.4th 877, 887 (*Tran*).) A "convicted defendant is not entitled to the benefits of section 17(b) as a matter of right. Rather, a reduction under section 17(b) is an act of leniency by the trial court, one that 'may be granted by the court to a seemingly deserving defendant.'" (*Tran*, at p. 892, italics omitted.)

The decision whether to reduce a wobbler is "an intensely fact-bound inquiry taking all relevant factors, including the defendant's criminal past and public safety, into due consideration." (*Alvarez, supra*, 14 Cal.4th at pp. 981–982.) Furthermore, the "factors that direct similar sentencing decisions are relevant, including 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his [or her] traits of character as evidenced by his [or her] behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule [4.]410." (*Alvarez*, at p. 978, fn. omitted.) These objectives include protecting society; punishing the defendant; deterring the defendant and others from future criminal offenses; securing restitution for victims; achieving uniformity in sentencing; and increasing

public safety by reducing recidivism. (Cal. Rules of Court, rule 4.410(a).)[2] Also relevant are the factors set forth in rules 4.421 (circumstances in aggravation) and 4.423 (circumstances in mitigation).

We conclude the trial court did not abuse its discretion in declining to reduce Brimmer's wobbler to a misdemeanor. Brimmer does not contend the court failed to consider any relevant factors or legitimate sentencing objectives, and the record reflects the court took into account general sentencing factors, including circumstances in aggravation and mitigation. After weighing these considerations, the court reasonably found that Brimmer's numerous prior offenses, including being on probation for a prior burglary at the time of the offense in question, were factors that tilted the balance in favor of felony treatment. (See rule 4.421(b)(4) [defendant was on probation when crime was committed], (b)(5) [prior unsatisfactory performance on probation].) The court also considered the circumstances of the offense, including Brimmer's brazen and convincing impersonation of a security guard. (Rule 4.421(a)(8) [manner in which crime was carried out indicates planning, sophistication, or professionalism].) On this record, we cannot say it exceeded the bounds of reason for the court to conclude there were sufficient concerns about Brimmer's conduct to conclude he was not deserving of leniency under section 17, subdivision (b).

Additionally, as the People emphasize, the trial court's decision not to reduce the wobbler offense was also supported by its desire to rehabilitate Brimmer, as misdemeanor punishment was limited to one year in jail (§ 461, subd. (b)), and Brimmer had almost accrued that amount of time in credit as of the sentencing hearing. By placing Brimmer on felony probation, the court

---

[2]    Further unspecified rule references are to the California Rules of Court.

6

stated this would give him "a longer period" of supervision, which would include an individualized treatment and rehabilitation plan and mental health counseling to aid in his rehabilitation. In short, the court reasonably concluded felony rather than misdemeanor treatment would better serve the objectives of protecting society and deterring Brimmer from future offenses.

Brimmer's arguments to the contrary are not persuasive. He maintains the trial court did not give sufficient weight to the "minor" and "unthreatening" nature of the offense and the "mental and/or emotional disabilities" that reduced his culpability. (See rule 4.423(a)(7) [mitigating circumstance that defendant mistakenly believed conduct was legal]; rule 4.423(b)(2) [mitigating circumstance that defendant suffered from mental or physical condition that significantly reduced culpability for crime].) It is clear from the record, however, that the court considered these mitigating circumstances but concluded they were not dispositive, and Brimmer fails to establish its decision exceeded the bounds of reason. Though not egregious or violent, the offense was still troublingly invasive and involved some degree of sophistication in that Brimmer's impersonation of a security guard was sufficiently convincing to deceive police officers and civilians. Moreover, the record does not compel the conclusion that Brimmer's offense was wholly the product of a "deranged and/or confused mind" and "delusional sense of purpose and belonging" as he urges on appeal. That Brimmer gained entry by breaking a window, rifled through an office, and attempted to disable security monitors and alarms is consistent with an objective awareness of the criminality of his behavior.

In sum, we conclude that the trial court's refusal to reduce Brimmer's wobbler offense to a misdemeanor was not irrational or arbitrary and that

7

the court acted to achieve legitimate sentencing objectives.  There was no abuse of discretion.

## DISPOSITION

The judgment is affirmed.


_____

Fujisaki, Acting P. J.


WE CONCUR:


_____

Petrou, J.


_____

Rodríguez, J.


*People v. Brimmer* (A172913)

8